CASE 42—PETITION ORDINARY—MARCH 5.

# Western Assurance Co. v. Rector.

APPEAL FROM WARREN CIRCUIT COURT.

1, FIRE INSURANCE.—Where a policy of insurance upon a stock of "general merchandise," provides that it shall be void if the insured keeps gunpowder in the premises without written permission in the policy, the mere fact that gunpowder is usually kept as part of such a

Western Assurance Co. v. Rector.

stock of goods, or that the agent who took the application told the insured that he could keep gunpowder for sale, will not preclude the company from relying on the condition in the policy. The rule excluding parol testimony to vary or contradict a written contract applies.

2. SAME.—Where an agent taking an application for insurance undertakes to write in the application the answers of the insured to the questions propounded to him, and the insured having answered truthfully, the agent, nevertheless, writes false answers, the company will be estopped from relying upon such misrepresentations to avoid the policy.

In this case the insured, in response to a question propounded to him as to his title to the property, stated that he held a bond for title with a lien on the property for two hundred dollars. The agent, in writing the answer to the question, stated that he held a fee-simple title. *Held*—That the company is estopped to rely upon the misrepresentation.

3. WHERE A MOTION FOR A NEW TRIAL IS NOT MADE in three days after the *verdict* is returned, nothing but the pleadings and the findings of the jury can be considered on appeal.

J. A. MITCHELL FOR APPELLANT.

1. The application should have been exhibited and declared on in the petition, and it was error to overrule defendant's motion to require the plaintiff to file it. (Wood on Fire Insurance, sec. 492; Bobbitt v. Liverpool Ins. Co., 8 Am. Rep., 222.)

2. The petition is defective, because it fails to *specifically* aver the performance of all conditions precedent, or facts which excuse non-performance, and the demurrer thereto should have been sustained. It is not sufficient to aver in general terms that the plaintiff has performed every condition imposed upon him. (Averbeck, &c., v. Hall, 14 Bush, 505; Bobbitt v. Liverpool Ins. Co., 8 Am. Rep., 494; Wood on Insurance, pp. 825, 826.)

3. When the agent has authority only to take applications and deliver policies, his knowledge of the facts is not notice to the company, and any misrepresentation by the insured in the application will avoid the policy, although the agent may know all the facts. (Wood on Insurance, sec. 389; *Ibid.*, sec. 342, p. 646; Galbraith's Adm'r v. Arlington Mut. Life Ins. Co., 12 Bush, 29; Lewis v. Phœnix Life Ins. Co., 30 Conn., 100; Mayes v. Hartford Fire Ins. Co., MS. Op., March 7, 1882; Vose v. Eagle Life and Health Ins. Co., 6 Cush., 42; Smith v. Ins. Co., 24 Pa., 320; Mitchell v. Lycoming Mut. Life Ins. Co., 51 Pa., 102; Wilson v. Conway Fire Ins. Co., 4 R. I., 141; Lowell v. Middlesex Mut. Fire Ins. Co., 8 Cush., 127; Forbes v. Agawam Ins. Co., 9 Cush., 470; Lee v. Howard, 3 Gray, 583; Ryan v. World

Western Assurance Co. v. Rector.

Mut. Life Ins. Co., 41 Conn., 168; S. C., 19 Am. Rep., 490; New York Life Ins. Co. v. Fletcher's Ex'r, &c., Sup. Ct. Reporter, April 26, 1886.)

4. The form of the application was sufficient to give the insured notice that the powers of the solicitor or agent were limited to the taking and receiving applications for insurance. (Merseran v. Phœnix Mut. Life Ins. Co., 66 N. Y., 274; Hannah Lee v. Guardian Life Ins. Co., 2 Cent. Law J., 495; Wood on Insurance, sec. 387.)

5. The policy was avoided by reason of the violation of the clause against the keeping of gunpowder in the insured premises (Macawber v. Howard Fire Ins. Co., 7 Gray, 257; Birmingham Fire Ins. Co. v. Kroegher, 24 Am. Rep., 147; Steinbach v. The Relief Fire Ins. Co., 13 Wall., 183; White v. Western Assurance Co. (Sup. Ct. Pa.), Legal Intelligencer of Dec. 24, 1886.)

W. LINDSAY OF COUNSEL ON SAME SIDE.

WILKINS & SIMS AND W. T. COX FOR APPELLEE.

1. The matter of estoppel and avoidance was properly set up in the reply. An amended petition was not necessary. (Civil Code, sec. 98, subsec. 2; Wood on Insurance, pp. 824 and 826.)

2. The motion for a new trial should have been made within three days after the verdict was returned (Imperial Fire Ins. Co. v. Kiernan, 7 Ky. Law Rep., 542); and not having been made within that time, the only question to be determined is, whether the findings were sufficient to authorize the judgment.

3. Statements written in the application are mere representations upon the part of the assured, and not warranties. (Ky. and Lou. Mutual. Co. v. Southard, 8 B. M., 637; 13 Bush, 313; 80 Ky., 223.)

4. Notwithstanding the stipulation of the policy that the agent taking the application is to be regarded as the agent of the assured, he is to be treated as the agent of the company, if he was in fact such, and his knowledge is to be regarded as that of the company. (Wood on Fire Insurance, sections 383, 388, 400, 401, 496, 497, 139; May on Insurance, sections 122, 131, 132, 140, 143, 144; 13 Wall., 222; 21 Wall., 152; 94 U. S., 63; 95 U. S., 673; 36 N. Y., 550; 62 N. Y., 48; 68 N. Y., 434; 10 Bush, 173; 18 B. M., 534; 69 N. Y., 128; 73 N. Y., 5; Boecher v. Hawkeye Co. (Iowa), 6 Reporter, 746; Planters' Co. v. Myers (Miss.), 7 Reporter, 49; St. Paul Co. v. Wells (Ill.), 7 Reporter, 267; Whited v. Germania Ins. Co. (New York), 8 Reporter, 437; Bennet v. North British, &c., Co. (New York), 10 Reporter, 409; Germania Co. v. McKee (Ill.), 10 Reporter, 629; Brandat v. St. Paul, &c., Co. (Minn.), 11 Reporter 484; Miller v. Alliance Ins. Co. (New York), 12 Reporter, 4; Farmers, &c., Co. v. Meckes (Penn.), 12 Reporter, 314; 13 Reporter, 464; Id., 284.)

Western Assurance Co. v. Rector.

5. The knowledge of a *soliciting* agent will be regarded as notice to the company, and therefore the company had notice in this case that gunpowder would be kept. (Ins. Co. v. Williams, 48 Am. Rep., 474; Woodberry Savings Bank v. Charter Oak Fire Ins. Co., 31 Conn., 517; Combs v. Savings and Insurance Co., 43 Mo., 149.)·

EDWARD W. HINES on same side.

1. Motion for new trial must be made in three days after verdict. (Imperial Fire Ins. Co. v. Kiernan, 7 Ky. L. R., 542.)

2. The application was the act of the agent, and not of the assured, and the company is estopped to rely upon any misrepresentation therein. (Ins. Co. v. Wilkinson, 13 Wall., 222; Ins. Co. v. Mahone, 21 Wall., 155; Plumb v. Cattaraugus Co. Mut. Ins. Co., 18 N. Y., 392; Rowley v. Empire Ins. Co., 36 N. Y., 550; Grattan v. Metropolitan Life Ins. Co., 80 N. Y., 294; Mowry v. Rosendale, 74 N. Y., 363; Campbell v. Merchants and Farmers' Ins. Co., 37 N. H., 48; Clarke v. Ins. Co., 40 N. H., 338; American Ins. Co. v. Luttrell, 89 Ill., 314; Rockford Ins. Co. v. Wilson, 75 Ill., 553; Andes Ins. Co. v. Fish, 71 Ill., 620; Atlantic Ins. Co. v. Wright, 22 Ill., 472; F. & M. Ins. Co. v. Chestnut, 50₍ Ill., 116; Malleable Iron Works v. Phœnix Ins. Co., 25 Conn., 474; Hough v. City Fire Ins. Co., 29 Conn., 22; Michigan State Ins. Co. v. Lewis, 30 Mich., 44; N. A. Ins. Co. v. Throop, 22 Mich., 158; Coombs v. Hannibal Savings and Ins. Co., 43 Mo., 456; Chase v. Hamilton Ins. Co., 20 N. Y., 52; Roth v. City Ins. Co., 6 McLean, 339.)

Cases distinguished: N. Y. Life Ins. Co. v. Fletcher, 117 U. S., 519; Ryan v. World Life Ins. Co., 41 Conn., 168; Gailbreath v. Arlington Mut. Life Ins. Co., 12 Bush, 29; Mayes v. Hartford Fire Ins. Co., MS. Op., January, 1882.

3. The agent of the company can not be made the agent of the insured by a provision in the policy to that effect. (Commercial Ins. Co. v. Ives, 56 Ill., 402; Clark v. Ins. Co., 40 N. H., 338; Wood on Ins., sec. 385; Rohrback v. Germania Fire Ins. Co., 62 N. Y., 47; Sprague v. Holland Purchase Ins. Co., 69 N. Y., 130; Masters v. Madison Co. Mut. Ins. Co., 11 Barb., 624; Ins. Co. v. Wright, 1 Wall 529; Wood on Ins., sec. 57.)

4. An immaterial misrepresentation will not avoid the policy. (Act Feb., 1874, Gen. Stats., p. 859, ed. 1877; Germania Ins. Co. v. Rudwig, 3 Ky. L. R., 721.)

5. Facts must be *pleaded* showing that representation was material to the risk. (Ins. Co. v. Southard, 8 B. M., 634.)

6. Overvaluation made in good faith does not make policy void. (Continental Ins. Co. v. Ware, 3 Ky. L. R., 621; Protection Ins. Co. v. Hall, 15 B. M., 411.)

7. The policy is to be construed liberally in favor of insured. (Ætna Ins. Co. v. Jackson, 16 B. M., 259.)

8. The agent's knowledge of the fact that the insured kept gunpowder
was the knowledge of the company. (Von Borries, &c., v. Ins. Co.,
8 Bush, 138; Phœnix Ins. Co. v Lawrence, &c., 4 Met., 17; Peoria
Ins. Co. v. Hall, 12 Mich., 202.)

9. The company had notice from the application itself that gunpowder
would be kept, the stock insured being described as "general mer-
chandise," which includes gunpowder. (Pindar v. Kings Co. Ins. Co.,
36 N. Y., 649; Whitmarsh v. Conway Fire Ins. Co., 16 Gray, 361;
Elliott v. Hamilton Mut. Ins. Co., 13 Gray, 139; Moore v. Protection
Ins. Co., 29 Me., 97; Leggett v. Ins. Co., 10 Rich. (S. C.), 202;
Phœnix Ins. Co. v. Taylor, 5 Minn., 492; Archer v. M. M. Ins. Co.,
43 Mo., 434.)

10. It is admitted that the agent informed the assured "that gunpowder
was included in the term 'general merchandise' and could not affect
the policy," and upon this statement the assured had the right to rely.

·CHIEF JUSTICE PRYOR DELIVERED THE OPINION OF THE COURT.

This was an action instituted in the court below to
recover upon a policy of insurance issued by the ap-
pellant upon the store-house and goods of the appellee.

On the trial of the case numerous special interrog-
atories were propounded to the jury, and upon the
return into court of the special findings, each party
moved for a judgment. The motion of the appellant
was overruled, and the case is here on appeal. Many
questions are presented by the record, only one of
which is necessary to be considered.

By the terms of the policy, the appellee, Rector,
was insured to the extent of two thousand dollars, as
follows: "Four hundred dollars on his one-story shin-
gle roof frame store-house building, occupied by the
assured for general merchandising, situated seven miles
from Bowling Green on the Scottsville road; eight hun-
dred dollars on his stock of dry goods and clothing,
while contained therein; two hundred and fifty dollars
on his hats, caps and notions, while contained therein;
four hundred dollars on his boots and shoes, while con·

tained therein ; and one hundred and fifty dollars on
his hardware, queensware and groceries, while con-
tained therein."

It is further provided on the face of the policy,
that "if in said premises there be kept gunpowder,
fire-works, nitro-glycerine, phosphorus, saltpetre, ni-
trate of soda, petroleum, naphtha, gasoline, benzine or
benzine varnish, * * (except the use of refined coal,
kerosene or other carbon oil for lights, if the same is
drawn and lamps filled by day-light), without written
permission in this policy, then and in every such case
this policy shall become void."

The testimony conduced to show that the appellee
kept gunpowder in his store, and the jury, by their
special finding, said that Richardson, the agent of the
company, knew that fact when the application was
prepared, and informed the appellee that keeping gun-
powder for sale would not affect his policy. The jury
also said that gunpowder was an article usually kept
in a country store of general merchandise.

It is admitted by the answer of the appellee that
he had gunpowder in his store, and besides, he testi-
fied that he made no effort to save any thing, as he was
afraid of the powder, as there was eighteen or twenty
pounds of it near the fire in the building at the time
of the loss. The only evidence, however, before this
court, consists in the special findings of the jury upon
the evidence adduced on the trial.

The motion for a new trial was not entered until the
motion for a judgment on the special verdicts made by
the appellant had been overruled, and this was some
eight or ten days after the verdict ; so this court can

look alone to the pleadings and the findings of the jury in disposing of the errors complained of.

It is admitted that some eighteen or twenty pounds of gunpowder was in the store, and that the appellee had kept it for sale since and before the policy issued. This was expressly prohibited by the contract; but the appellee, to avoid this defense, alleges in his petition or reply, that when the application for insurance was made, the agent of the general agents of the appellant saw the powder, and told him he had the right to sell gunpowder, and that this provision of the contract had no binding force when it was usual or customary to sell gunpowder from retail stores. That when regarded as a part of the ordinary merchandise kept in the establishment insured, it could be sold to customers. The fact that such a representation was made by the agent at the time, is sustained by the special finding. It is also maintained by counsel for the appellee, that although the keeping of gunpowder is prohibited by the terms of the policy, that "*when such goods as are usually kept in country stores*" are insured, it includes gunpowder, and gives the insured the right to sell. That the terms *general merchandise embraces gunpowder*, and the right to sell is implied, although the prohibition is express.

There is neither fraud nor mistake alleged in the execution of the policy in question; but, on the contrary, it is conceded that the appellee, the insured, knew what the policy contained, and his right to keep and sell powder in his store-house is based on the representations made by the agent at the time of the application that this provision of the policy did not prevent him from selling

it, as he did the other merchandise in his store-house. The policy was signed and delivered by the company containing stipulations forbidding the use of certain inflammable substances, including gunpowder, within the store-house, and that certainly, if kept, enhanced the risk, and now it is urged that this part of the contract may be disregarded, by showing that the agent had made representations at the time of the application that destroyed the efficacy of that part of the contract; in other words, that what the agent said at the time the application was made is to govern, and not the stipulations embraced in the policy itself.

We perceive no reason why the rule excluding parol evidence contradicting or varying the terms of a written contract should not apply to contracts of insurance as well as to any other written contract evidencing the purpose and intention of the parties.

Here the verbal statement made by an agent prior to, or at the delivery of the policy, is held sufficient to establish a contract entirely inconsistent with the writing, in the absence of either fraud or mistake in its execution.

Cases with reference to insurance policies may be found where the policy or its meaning has been interpreted in the light of the circumstances surrounding its execution, that would seem to be at variance with this rule; as where a building insured was being used for the manufacture of certain articles that required the use of inflammable material, and without which the building and the business in it would have been useless, it was held that the right to keep and use every thing necessary to the manufacture of the articles existed, although

the policy forbid it, consent having been given by the insurance company that the building insured might be used for the purpose of manufacturing the particular article. (Veile v. Germania Insurance Co., 26 Iowa, 9; Archer v. Merchants' Ins. Co., 43 Mo., 434)

In this case no such question can arise; and because powder is usually kept in a country retail store it is maintained that the insured has the implied consent of the company to keep and sell that which is expressly forbidden by the written contract. The fact that an insurance is obtained upon the stock of merchandise, and that powder is usually kept and sold or classed with the articles composing this merchandise, will out authorize the sale of powder, if, by the terms of the contract, it is prohibited, and the policy declared void if violated in that particular.

As said by the court in the case of the Birmingham Fire Ins. Co. v. Kroeger, 83 Penn., 64: "The reason for the prohibition may arise from the fact that the custom of selling gunpowder does exist in a country store, and if such articles were never found among such stocks, this provision in the policy would be useless.

The keeping of gunpowder certainly increased the hazard, and its prohibition from sale was a material part of the contract; and the statement made by the agent is so much at variance with the policy, that if permitted to supplant the writing, it seems to us would be opening the door to an assault upon every written contract by the mere verbal statement of the parties or their agents made at the time of its execution. That a written contract may be canceled or reformed upon a state of pleading that would admit parol proof of its terms, will

not be denied ; but when the written contract is plain in its meaning, and purports to express the intention of the parties, it would be a departure from a well recognized rule of evidence applicable to all contracts to permit the introduction of parol evidence to show that the parties intended to give no force to certain stipulations of a contract that, if enforced as written, must, from its terms, have been regarded as an essential part of the contract, and perhaps without which the contract would never have been executed.

Applications for insurance policies, although signed by the insured, are sometimes written out, or the answers to the questions propounded reduced to writing by the company's agent, and when the agent has himself made a false statement by writing that which he knew was false and different from the statement given him by the assured, the company will be estopped from taking advantage of its own wrong or that of its agent ; and the principle, as said by Mr. Justice Miller, in the case of the Insurance Co. v. Wilkerson, 13 Wallace, 222, is : "That where one party has, by his representation or conduct, induced the other party to a transaction to give him an advantage which it would be against equity and good conscience for him to assert, he should not in a court of justice be permitted to avail himself of that advantage." It then becomes the statement of the company and not that of the applicant, and the rule recognized proceeds on the idea "that the application thus made is not the instrument of the party whose name is signed to it."

Here is an instrument that the insurance company signed and delivered as its obligation to pay in the event

of loss by fire.  It contained a stipulation unmistakable in its meaning, by which the policy is to be void if gunpowder is kept and sold in the store-house.  This fact is known to the appellee, but he has seen proper to follow the interpretation of such contracts given by the sub-agent of the local agents, or by the local agents made at the time of the application, that, notwithstanding such provisions, you (the insured) can disregard them, and sell as if no such writing had been executed.

In this case the answers purporting to have been made by the applicant to the questions propounded are held not to affect him, although untrue and material to the risk, because the agent of the company, in reducing the answers to writing, made a false statement as to the title which he knew was untrue, and when, if he had written the response as given by the assured, the company could not have been deceived. The insured stated to the agent that he held a bond for title with a lien on the property for two hundred dollars, when the agent made him state that he had a fee-simple title.  The answer was made truly by the assured and in good faith, and the falsehood stated was by the agent and not the assured.  The latter did not, perhaps, know the difference between an equitable and a fee-simple estate, and the doctrine of estoppel should apply.

But the court has gone further, and made the policy of insurance signed by the company with its written stipulations, subject to the interpretation given by the agent of the language used.

The stipulation, "that if gunpowder is kept and

sold by the insured without the consent, in writing, of the company, the policy shall be void," means that you may sell if gunpowder is usually sold in such stores. If such testimony is admissible in the absence of some appropriate pleading to re-form or cancel the writing, every stipulation contained in the policy may be disregarded in the same manner, and each party left to determine at last the terms of the insurance by such parol proof as would be competent to establish a contract if no writing had been executed.

The mere fact that the party insured has gunpowder in his store at the time, and the agent knew it, or that he intended to keep it, will not estop the company, as some of the opinions indicate, from enforcing the terms of the policy. If there is no powder kept or sold in the dry goods or grocery store, there is no necessity for any such clause in the policy; but as the keeping of gunpowder is especially hazardous, when there is a contract forbidding its sale it should be enforced. That part of the contract may, it is true, be waived; but there is no such question raised in this case, and applying the rule of evidence to this class of contracts that is applied to all other written instruments, it must be held that the mere statements of the agent cannot vary the terms of the written contract between these parties.

In the case of Steinbach v. Insurance Company, 13 Wallace, 183, where a like character of argument was presented, the court in response said: "But the plaintiff contends that they are included in the description of 'other articles in his line of business.' The answer to this is, that the policy itself requires that fire-works shall be specially written in it."

In the present case the company and the insured enumerated all the articles to be insured and their value. First, the store-room at four hundred dollars; stock of dry goods, eight hundred dollars; hats and caps, two hundred and fifty dollars; boots and shoes, four hundred dollars; hardware and queensware, one hundred and fifty dollars; amounting in all to two thousand dollars. With this specific character of goods and wares insured, it is claimed was included the powder that, instead of being insured, forfeited the policy if kept and sold.

Courts have gone far in protecting the insured against statements made by overzealous and always importunate insurance agents; but we are not disposed, however great the hardship of the case, to remove all safeguards embodied in the contract of insurance for the protection of the company, because an interpretation of its meaning has been given by an agent contrary to the plain import of the language used. In our opinion the pleadings and special findings entitled the appellant to a judgment.

The judgment is reversed, and cause remanded that such a judgment may be entered.